```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      )
                              )
          v.                  )   Criminal No. 17-24
                              )
JONATHAN SCOTT BOYNTON        )
```

**DEFENDANT'S MOTION FOR DOWNWARD VARIANCE**

AND NOW, comes the defendant Jonathan Boynton by his attorney, and pursuant to 18 U.S.C. §3553(a), he represents the following:

**A.**

1. Appended hereto are letters from

    -- Robert Boynton, Exhibit A,

    -- Pastor Mike Watson, Exhibit B,

    -- Mark Rodgers, Exhibit C,

    -- Christin Bowers, Exhibit D, and

    -- Dana S. Mintsiveris, AIA, Exhibit E.

2. The substance which is manfest in these letters expands upon, and further "fleshes out" the information about Jonathan Boynton which appears throughout the Pre-Sentence Report.

3. When considered as a whole, the nature and circumstances of the offenses in this case, and Jonathan Boynton's own history and characteristics combine to demonstrate that 60 months of imprisonment, followed by a

term of supervised release is the sentence which is sufficient, but not greater than necessary to comply with the purposes of sentencing which Congress codifies.

4. On November 28, 2017, formal court proceedings began for Jonathan Boynton with his Initial Appearance, Arraignment and Release on Bail, with home detention and electronic monitoring.

5. Five and a half months earlier--on June 12, 2017--Jonathan Boynton confessed to his having possessed and received the images in this case.

6. As is manifest throughout Exhibits A through E, that confession was a "watershed" moment in Jonathan Boynton's life.

7. In particular, it served as the critical starting point in his ongoing and unwavering commitment to reform, rehabilitation and self-improvement.

8. Exhibits A through E also clearly show that as Jonathan Boynton goes forward, there will be the constant, steady and sure love, kindness and support which stream back and forth between him, his friends and members of his church and family.

9. On March 25, 2019 Jonathan Boynton will appear before this Court for sentencing.

10.   That day he will be 31 years old.

11.   On that date, he will have been fully compliant with all conditions of the Order Setting Conditions of Release which was issued when he made his Initial Appearance before this Court on November 28, 2017.

12.   The key conditions of that Order include home detention with electronic monitoring and work release.

13.   As modified with Jonathan Boynton's consent on March 2, 2018, those conditions also have had Jonathan Boynton participate in a mental health evaluation, and the ensuing course of treatment.

14.   As is confirmed in ¶ 44 of the Pre-Sentence Report, the evaluation and the treatment have been conducted by Dr. Paul G. Kovacs. The diagnoses for which Jonathan Boynton continues in these regular treatment sessions are Attention Deficit Hyperactivity Disorder (ADHD) and Persistent Depressive Disorder.

15.   The following Chronology puts the past two years in the context of the underlying investigation.

16.   It was on three dates--March 17, 2017, April 23, 2017 and April 27, 2017--that agents from Homeland Security went on line to the BitTorrent file sharing network and

discovered images of child pornography at an IP address which "matched up" with Jonathan Boynton's land address.

17. In turn, having obtained the land address, the agents--on June 9, 2017--applied for and obtained a search warrant for the home at that address.

18. On June 12, 2017, the agents executed that warrant, and in the course of doing so, they interviewed Jonathan Boynton. At that time, he admitted to his membership in the BitTorrent file sharing network, and to his receipt and possession of the images in this case.

19. That day, Jonathan Boynton was not arrested or detained.

20. Instead, four months later, i.e., on November 14, 2017, the grand jury returned the two count Indictment.

21. And on November 28, 2017, the agents brought Jonathan Boynton to this Court.

22. At that time, the Court conducted the Initial Appearance and the Arraignment, and Jonathan Boynton was released pursuant to the Order Setting Conditions of Release.

23. The "work release" component of that Order has enabled Jonathan Boynton to continue working his full time job in the warehouse of Weber Electric--that employment having been interrupted for the two week period in October

4

2018 while he was recovering from an on-the-job fork lift accident.

**B.**

A distinct set of mitigating circumstances in this case relates, not to Jonathan Boynton and his personal history and characteristics, but to how two of the §2G2.2 factors and enhancements are unsupported by "empirical data and national experience," and to how these §2G2.2 "bumps" do not soundly reflect the §3553(a)(2) purposes.

In <u>Kimbrough v. United States</u> _ US _, 128 S.Ct. 558, _ LEd2d_(2007), the Supreme Court observed that

> "the Government acknowledges that the Guidelines 'are now advisory' and that, as a general matter, 'courts may vary [from guideline ranges] based solely on policy considerations, including disagreements with the Guidelines.' ... cf. Rita v. United States, 551 U.S. ---, ---, 127 S.Ct. 2456, 2465, 168 L.Ed.2d 203 2007) (a district court may consider arguments that 'the Guidelines sentence itself fails properly to reflect §3553(a) considerations')."

Id, 128 S.Ct. at 570.

In <u>Kimbrough</u>, the foregoing principles were affirmed in one specific setting, i.e., the Supreme Court ruled that a sentencing court may--in sentencing pursuant to §3553(a)(2)-- disagree with the Sentencing Commission's assessment of the significance and import of the weight of crack cocaine in a

particular case.  In so ruling, the Supreme Court nevertheless preserved a place for the Sentencing Commission in the sentencing process; to wit,

> "While rendering the Sentencing Guidelines advisory, United States v. Booker, 543 U.S. 220, 245, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), we have nevertheless preserved a key role for the Sentencing Commission.  As explained in Rita and Gall, district courts must treat the Guidelines as the 'starting point and the initial benchmark,' Gall v. United States, ante, --- U.S., at ----, 128 S.Ct. 586, 2007 WL 4292116.  Congress established the Commission to formulate and constantly refine national sentencing standards.  See Rita v. United States, 551 U.S. ----,---- - ----, 127 S. Ct. 2456, 2464-2465, 168 L.Ed.2d 203 (2007).  Carrying out its charge, the Commission fills an important institutional role: It has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.'  United States v. Pruitt, 502 F.3d 1154, 1171 (C.A.10 2007) (McConnell, J., concurring); see supra, at 1171.
>
> We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'  Rita, 551 U.S., at ----, 127 S.Ct. At 2465.  The sentencing judge, on the other hand, has 'greater familiarity with ... the individual case and the individual defendant before him than the Commission or the appeals court.' Id. At - 127 S.Ct., at 2469.  He is therefore 'in a superior position to find facts and judge their import under §

6

> 3353(a)' in each particular case. Gall, ante, --- U.S., at ----, 128 S.Ct. 586, 2007 WL 4292116 (internal quotation marks omitted). In light of these discrete institutional strengths, a district court's decision to vary from the advisory Guidelines may attract greatest respect when the sentencing judge finds a particular case 'outside the 'heartland' to which the Commission intends individual Guidelines to apply.' Rita, 551 U.S., at ----, 127 S.Ct., at 2465. On the other hand, while the Guidelines are no longer binding, closer review may be in order when the sentencing judge varies from the Guidelines based solely on the judge's view that the Guidelines range 'fails properly to reflect § 3553(a) considerations' even in a mine-run case.
>
> The crack cocaine Guidelines, however, present no occasion for elaborative discussion of this matter because those Guidelines do not exemplify the Commission's exercise of its characteristic institutional role. In formulating Guidelines ranges for crack cocaine offenses, as we earlier noted, the Commission looked to the mandatory minimum sentences set in the 1986 Act, and did not take account of "empirical data and national experience."

In formulating the guideline ranges for §2G2.2 cases, the Commission also did not take account of "empirical data and national experience." <u>United States v. Baird</u>, 2008 WL 151258 (D. Neb. Jan. 11, 2008) ("The court notes that the Guidelines for child exploitation offenses, like the drug-trafficking Guidelines, were not developed under the

7

empirical approach, but were promulgated, for the most part, in response to statutory directives. ... Because the Guidelines do not reflect the Commission's unique institutional strengths, the court affords them less deference than it would to empirically-grounded guidelines."). As such, there is no legal cause for this Court to assume that the factors named in §2G2.2, and the corresponding enhancements in the guideline range do, in fact, "reflect §3553(a) considerations, even in a mine run case."

Of the §2G2.2 factors in this case, two warrant special mention because the underlying facts which support those factors do not make a person's conduct any more severe or grave or offensive.

i.

The §2G2.2(b)(6) "bump" for "use of a computer" does not render someone's "child pornography" conduct more grave or offensive. The now long-since firmly established advent of personal computers and internet technology means that the computer-based possession and file-sharing of child pornography is no worse than the possession and file-sharing would be in a purely "paper-based" world. Furthermore, this computer and internet based conduct--if it does anything--

8

only makes such possession and distribution easy for police to detect.

ii.

Furthermore, the personal computer--and the corresponding ease with which a user can "word-search" and obtain items of interest--means that, with no special resourcefulness or proclivity, a person can acquire between 300 and 600 images, especially since Application Note 4(B)(ii) in the Commentary following §2G2.2 provides that each video counts as 75 images.  Accordingly, the "number of image" enhancement also does not accurately reflect any factual basis for a sentencing enhancement.

## CONCLUSION

WHEREFORE, the defendant Jonathan Boynton respectfully requests that this Court grant a downward variance from the "87-108" range to the sixty month minimum.

Respectfully submitted,

s/ Thomas Livingston  
Thomas Livingston  
Assistant Federal Public Defender  
Attorney ID No. 36949